THOMAS PAYNE, Plaintiff-Appellant, v. ROBERTA JEAN MROZ et al., Defendants (Edward L. Begeman, as Adm'r of the Estate of Aida M. Begeman, Deceased, Defendant-Appellee).

First District (6th Division) No. 1—91—2956

Opinion filed March 11, 1994.—Rehearing denied April 7, 1994.

Joseph R. Curcio, Ltd., of Chicago, for appellant.

Kevin G. Owens, of Johnson & Bell, Ltd., of Chicago (Thomas H. Fegan and Mindy Kallus, of counsel), for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Thomas Payne, filed an action against several defendants, seeking recovery for personal injuries he suffered in an automobile accident with Aida M. Begeman, who was killed in the accident. He later added Edward L. Begeman, the administrator of Aida's estate, as one of the defendants. The trial judge granted Edward Begeman's motion for summary judgment. The only parties to this appeal are Payne and Edward Begeman. Payne contends that the trial judge based his summary judgment order on incompetent evidence and that there is a genuine issue of material fact precluding summary judgment.

The evidence came from several depositions which indicate the following facts. On November 29, 1987, Payne was injured when Aida Begeman's car struck his car as he was traveling westbound on 95th Street. Payne has no memory of the collision. Aida's automobile, a small car, hit Payne after the defendant, Roberta Mroz, driving a large Ford LTD, struck Aida. Both Mroz and Aida were driving

eastbound on 95th Street, which has four lanes. Mroz was in the far eastbound lane and Aida was in the middle eastbound lane, next to the median. Mroz believed Aida's car was traveling at approximately 30 miles per hour. Aida was driving in a proper manner and was completely within her lane at all times before the crash.

As Mroz drove eastbound and approached the overpass which allows Harlem Avenue to go over 95th Street, she suddenly saw a car "dead stopped" in her lane. The weather was "icy and snowing." The stopped car was in effect trying to merge into traffic on 95th Street from an interstate exit. Mroz, who was intoxicated, was driving at approximately 35 miles per hour and believed she could not avoid a collision with the stopped car if she stayed in the far eastbound lane. Therefore, she quickly swerved into the middle eastbound lane. As Mroz switched lanes, the left front corner of her car hit the right rear side and corner of Aida's car. This impact was "heavy [and] hard." Aida's car then traveled across the median, and hit the plaintiff's car in the middle westbound lane. Mroz said the median strip was about five feet wide; it was concrete and "just like a curb."

Mroz saw Aida's car go over the median and collide with the plaintiff's car. Aida "was trying to steer to avoid the head-on traffic," but "skidded" into the westbound lanes. Mroz explained, "At that point, [Aida] just panic[k]ed or I don't know, well, what would you do if you got hit like that? She skidded." Mroz believed Aida used her brakes because of the manner in which her car skidded; she said, "I am sure [Aida] definitely hit her brakes right when I hit her." Mroz repeatedly stated that Aida could not have avoided the collisions with her LTD or with the plaintiff. Mroz's LTD "pushed" Aida into the westbound lanes and Aida "couldn't have done anything different than what she did."

Richard and Theresa Mora were in a car traveling westbound on 95th Street when the accident occurred as they drove past. They were in the middle westbound lane and were traveling at approximately 40 miles per hour; they slowed to an "immediate stop" when they saw the LTD hit Aida's car. Both saw Mroz hit Aida as they passed, then they turned and looked out the back window to see Aida crash into the plaintiff.

Richard first noticed the LTD after he drove under the Harlem Avenue overpass; the car drew his attention because it was moving very quickly, approximately 60 miles per hour. Richard stated Mroz "was driving like a maniac." Aida was simply "keeping up with the flow of traffic." Theresa did not notice Mroz or Aida before they crashed. Theresa said the median was 10 to 15 feet wide, but she was not sure; the median was raised a "matter of inches."

According to Richard, the LTD struck Aida "hard enough to knock [Aida's] car into the median strip, and [her] car just started sliding." He continued, "The way [Aida] was hit, she went straight across—her car was just sliding all over like she just completely lost control." The manner in which Aida slid made "it look[ ] like she was trying to control her car." Also, "[s]he tried braking after the [LTD] struck her." Richard did not see any way for Aida to avoid "the accident."

Mroz executed a U-turn and fled the scene at a high rate of speed heading west. Richard Mora followed her car, and at one point he was close enough to take down her license plate number which he reported to the police. Mroz was later convicted of vehicular homicide and was sentenced to the penitentiary.

Theresa stated that Mroz "forced" and "pushed" Aida onto the median. At first she said Aida could not have avoided hitting the plaintiff, then she stated: "Well, I can't really say that. I don't know what was going through her mind, but she was forced over." Aida "did not skid, [but] just went over" the median. Theresa Mora testified that she did not notice whether Aida had her brake lights on. She observed the impact by looking through the rear window of the car her husband was driving.

Bridgeview police officer Brzinski investigated the accident. He explained that he did not take measurements of any skid marks in the eastbound lanes of 95th Street because "[t]here was no skid marks that was there that were—able to get any measurements from." There were skid marks visible in the westbound lanes, however. Brzinski was not asked which car made the westbound skid marks.

On August 1, 1991, the trial judge conducted a hearing on Begeman's motion for summary judgment. He noted that much of the deposition testimony "stands unrefuted." The plaintiff did not object to Begeman's use of lay witness opinions from the depositions. The judge, however, referred to the case of *Freeding-Skokie Roll-Off Service, Inc. v. Hamilton* (1985), 108 Ill. 2d 217, 483 N.E.2d 524, in which the supreme court reversed the case because of the introduction of lay opinion testimony that one of the parties could not have avoided an accident. The judge, however, determined that the opinion evidence in *Freeding-Skokie* was distinguishable from the lay opinions in this case. His later remarks indicate that he did rely on the lay opinions of the witnesses that Aida could not have avoided the accident.

In urging reversal of the summary judgment order and remandment for trial, the plaintiff argues that the trial judge improperly considered accident reconstruction evidence, incorrectly used the lay

opinion evidence and erred in finding no genuine issue of material fact. We reject the defendant's claim that the judge improperly relied on the police officer's statements concerning an accident reconstruction expert's opinion. The trial judge specifically refused to consider this evidence.

` The defendant argues that the plaintiff has waived the right to . assign as error the judge's ruling on the use of lay opinion evidence because the plaintiff failed to object. We have determined that we need not consider whether waiver exists or whether the trial judge properly distinguished *Freeding-Skokie*, because we have also determined that, even in the absence of the lay opinion evidence which is now questioned, the trial judge properly granted summary judgment.

Mroz testified that within two seconds of impact Aida's car skidded into the westbound lane at an angle and in another two seconds Aida's car collided with the plaintiff's car. She saw Aida's brake lights on, and she also saw Aida's attempt to steer the vehicle to avoid the head-on traffic.

Brzinski testified that he was unable to measure skid marks because of the heavy volume of traffic in the area. He did not recall observing any skid marks in the eastbound lanes. Richard Mora testified that the impact between Mroz's vehicle and Aida's was "hard and heavy." He attributed the heavy impact to the speed at which Mroz was driving. Because of the force of the impact, Aida's vehicle slid across the median. Theresa Mora testified that it was misting or raining and that the pavement was wet at the time of the accident.

The plaintiff maintains that a material question exists whether Aida, in attempting to avoid the collision with the plaintiff, exercised all reasonable care with respect to the application of her brakes before the collision. He insists that a trier of fact could reasonably infer from the testimony of Theresa Mora and Officer Brzinski that Aida either "totally failed to apply her brakes prior to colliding with the plaintiff or did not apply them as hard as she could or should have in order to avoid doing so." Implicit in the plaintiff's argument is the supposition that there is evidence that Aida did not apply her brakes, but most important, the supposition that there is evidence that the accident would have been avoided if Aida had applied her brakes. Neither supposition is supported by the record. Certainly the second supposition is not. Mroz testified that she saw Aida's brake lights on. Mora simply testified that they did not see them. She did not testify that the lights were not on. She observed the impact between Aida's car and the plaintiff's car by looking back through the rear view window.

The plaintiff also points to the fact that Officer Brzinski testified that he did not observe any skid marks on the lane for eastbound traffic. We point out that Brzinski's testimony was equivocal. He said he did not recall observing any skid marks in the eastbound lanes. We are unable to determine from the record what vehicle caused the skid marks in the westbound lane. Moreover, the absence of skid marks does not necessarily mean that Aida did not apply her brakes; every application of brakes does not necessarily cause skid marks. In addition, according to one witness, it was raining. Under the circumstances, the absence of skid marks is of no appreciable significance.

The mere happening of an accident does not entitle a plaintiff to recover. A plaintiff must come forward with evidence of negligence on the part of the defendant and with evidence that the defendant's negligence was a proximate cause of the plaintiff's injuries. Proximate cause can only be established when there is a *reasonable certainty* that the defendant's acts caused the injury. *Whitman v. Lopatkiewicz* (1987), 152 Ill. App. 3d 332, 504 N.E.2d 243.

The test of summary judgment is the same as the test for a motion for a directed verdict. (*Fooden v. State Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.) Although a plaintiff need not prove his entire case at the summary judgment stage, he must introduce evidence that would support a finding in his favor. In this case, at a trial, the plaintiff would be required to establish that it is more probably true than not true that Aida was negligent in such a fashion that she proximately caused the accident. It would not be enough that the plaintiff introduce evidence from which a fact finder could conjecture or guess or suspect that if Aida had applied her brakes she could have avoided the collision.

The plaintiff concedes that his claim of negligence is based on circumstantial evidence. It is true that circumstantial evidence may be sufficient when an inference may *reasonably* be drawn from it, but a fact cannot be established by circumstantial evidence unless the circumstances are of such a nature and so related to each other that it is the only conclusion that can be drawn therefrom, and mere conjecture, guess or suspicion is insufficient. *Waite v. Chicago Transit Authority* (1987), 157 Ill. App. 3d 616, 510 N.E.2d 1176.

Every witness to the accident explained that Aida was forced onto the median before hitting the plaintiff. Richard Mora and Mroz repeatedly explained that Aida was trying to brake and to control her car when she slid into the plaintiff. Even Theresa Mora, who stated Aida "did not skid," qualified this remark with her explanation that Aida was forced over the median by Mroz and did not travel that path by her own actions.

The plaintiff argues that cases such as *Waite* and *Whitman*, cited by the defendant, are in conflict with the general proposition that all reasonable inferences in favor of the plaintiff must be drawn by the fact finder in response to the motion for summary judgment made by the defendant. We insist that the rule of *Waite* and *Whitman* is not a divergence from the general rule. The plaintiff has established nothing but mere conjecture that Aida failed to brake and that her failure to brake, in turn, may have caused the accident.

For these reasons, we conclude that the trial judge properly entered summary judgment for the defendant.

Judgment affirmed.

McNAMARA and RAKOWSKI, JJ., concur.